STATE of Missouri, Respondent,

v.

Grover C. ROBINSON, Jr., Appellant.

No. WD 60741.

Missouri Court of Appeals,
Western District.

April 8, 2003.

Steven D. Wolcott, Liberty, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Nicole E. Gorovsky, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before EDWIN H. SMITH, P.J., and SMART and HARDWICK, JJ.

EDWIN H. SMITH, Presiding Judge.

Grover C. Robinson, Jr., appeals his convictions, following a jury trial in the Circuit Court of Jackson County, of three counts of child molestation in the first degree, § 566.067.[1] As a result of his convictions, the appellant was sentenced to three concurrent five-year terms of imprisonment in the Missouri Department of Corrections.

The appellant raises two points on appeal. In Point I, he claims that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence on all three counts of child molestation in the first degree because the State failed to prove, as required by due process, each and every element of the charged offenses beyond a reasonable doubt. In Point II, he claims, as to his conviction under Count II only, that the trial court erred in preventing him from introducing, as substantive evidence, alleged prior inconsistent statements of the victim contained in her deposition concerning the charged June 7, 1999, incident, because it was mandated under § 491.074.

We affirm.

## Facts

During the summer of 1999, the appellant and his wife, Marjorie Robinson, lived in Raytown, Missouri, with their two children, Grover III and M.K.R. Although married, the appellant and his wife slept in separate bedrooms. The appellant's and the children's bedrooms were upstairs, while Mrs. Robinson slept in the basement.

On the evening of June 7, 1999, Mrs. Robinson watched television with her children until 10:00 p.m., at which time the children went upstairs to get ready for bed. Several minutes later, Mrs. Robinson walked upstairs to say goodnight to the children. As she walked down the hallway, Mrs. Robinson looked into the appellant's bedroom and saw him lying in bed with M.K.R., who was nine years old at the time. Although the lights in the bedroom were off, the room was illuminated by the television and the light from the hallway. Mrs. Robinson saw that the appellant had his hand inside the back of M.K.R.'s shorts in between her legs and appeared to be touching her vagina. The appellant, who was kissing his daughter and telling her how much he loved her, was attempting to roll her on top of him when Mrs. Robinson yelled, "What the hell is going on?" The appellant quickly took his hand out of M.K.R.'s shorts and said to his wife, "Oh you have an evil mind." Mrs. Robinson then rushed out of the appel-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

lant's bedroom and went to a nearby bathroom.

By the time that she reached the bathroom, Mrs. Robinson realized that she needed to get M.K.R. out of the appellant's bedroom. When she returned to the appellant's bedroom, the appellant was hitting M.K.R. on the shoulder and asking her, "You love me, don't you?" Mrs. Robinson took M.K.R. from the bedroom, and they went downstairs. She then asked M.K.R. if the appellant had done this before, and, if so, where on her body had she been touched. M.K.R. responded by pointing to her breasts and her crotch. Mrs. Robinson then proceeded to call the police, who arrived approximately ten minutes later.

Officers Christina Christiansen and Erick Simpson of the Raytown Police Department were dispatched to the appellant's home to investigate the complaint. Mrs. Robinson informed Officer Christiansen as to what she had witnessed, who spoke privately with M.K.R. M.K.R. told her that she fell asleep watching television, and, when she awoke, the appellant was touching her "private parts," which she identified by pointing to her chest and between her legs. In addition, M.K.R. told Officer Christiansen that the appellant had been doing this since she was six years old. Based on their investigation, Officers Christiansen and Simpson placed the appellant under arrest for suspicion of child molestation.

A social worker employed with the Child Protection Center of Children's Mercy Hospital, Julie Donelon, conducted a videotaped interview with M.K.R. on June 17, 1999. During that interview, M.K.R. stated that on the night of June 7, 1999, the appellant was touching the "outside of her leg" with his hand and that his leg touched her vagina. M.K.R. also told Donelon that the appellant had touched and kissed her breasts under her clothes on several occasions occurring in January 1999 and June 1999.

On October 28, 1999, the appellant was charged by information in the Circuit Court of Jackson County with sexual misconduct in the first degree, § 566.090, and eight counts of child molestation in the first degree, § 566.067. On July 27, 2001, the State filed an amended information charging the appellant with three counts of first-degree child molestation. In Count I, the State alleged that the appellant "touched [M.K.R.'s] breast with his hand"; in Count II, it alleged that the appellant "touched [M.K.R.'s] vagina with his hand"; and in Count III, it alleged that the appellant "touched [M.K.R.'s] breast with his mouth."

The appellant's case proceeded to a jury trial on August 17, 2001. The appellant moved for judgment of acquittal at the close of the State's evidence and the close of all the evidence. On August 23, 2001, the jury returned guilty verdicts against the appellant on all three counts. On October 3, 2001, the appellant filed a motion for judgment notwithstanding the verdict, and, in the alternative, a motion for new trial. The trial court overruled both motions and sentenced him to three concurrent five-year terms of imprisonment.

This appeal follows.

**I.**

In Point I, the appellant claims that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence on all three counts of child molestation in the first degree because the State failed to prove, as required by due process, each and every element of the charged offenses beyond a reasonable doubt. Specifically, he claims that to convict him, the State was required to prove,

*inter alia,* that he subjected the victim to "sexual contact," as defined in § 566.010(3), which it failed to do in that there was no evidence from which the jury could reasonably conclude that he touched the victim underneath her clothing.

Our standard of review is set forth in *State v. Johnson,* 62 S.W.3d 61, 69–70 (Mo. App.2001) (*quoting State v. O'Brien,* 857 S.W.2d 212, 215–16 (Mo. *banc* 1993)):

A challenge to the sufficiency of the evidence to support a finding of guilt is based in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. No person may be deprived of liberty, 'except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt.' The constitutional sufficiency of the evidence is a question of law to be determined, in the first instance, by the trial court on proper motion by the defendant and again on appeal.

When properly raised by the defendant, the question of sufficiency arises before the case is put to the jury; the challenge is to the 'submissibility' of the case. Therefore, any guilty verdict subsequently rendered by the jury is wholly irrelevant to the question of whether the case was sufficient to go to the jury at all. The Court's review is limited to determining whether the evidence is sufficient to persuade any reasonable juror as to each of the elements of the crime, beyond a reasonable doubt. To ensure that the reviewing court does not engage in futile attempts to weigh the evidence or judge the witnesses' credibility, courts employ 'a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.' Thus, evidence that supports a finding of guilt is taken as true and all logical inferences that support a finding of guilt and that may reasonably be drawn from the evidence are indulged. Conversely, the evidence and any inferences to be drawn therefrom that do not support a finding of guilt are ignored.

The appellant was charged with three counts of child molestation in the first degree, under § 566.067, which provides:

1. A person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact.

2. Child molestation in the first degree is a class B felony unless the actor has previously been convicted of an offense under this chapter or in the course thereof the actor inflicts serious physical injury, displays a deadly weapon or deadly instrument in a threatening manner, or the offense is committed as part of a ritual or ceremony, in which case the crime is a class A felony.

In all three counts, the State alleged that "in between September 1, 1997 through June 7, 1999, in the County of Jackson, State of Missouri, the [appellant] subjected [M.K.R.] (DOB: 04/21/90), who was less than twelve years old to sexual contact." In Count I, the State alleged that the appellant "touched [M.K.R.'s] breast with his hand"; in Count II, it alleged that the appellant "touched [M.K.R.'s] vagina with his hand"; and in Count III, it alleged that the appellant "touched [M.K.R.'s] breast with his mouth."

At the time of the charged acts, "sexual contact" for purposes of § 566.067 was defined in § 566.010(3) as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, for the purpose of arousing or gratifying

sexual desire of any person." [2] As the appellant contends, under that definition, in order to convict him on all three counts as charged, the State had to prove, *inter alia*, that the alleged touchings occurred "underneath" the clothes of the victim, *State v. Wallace*, 976 S.W.2d 24, 25 (Mo. App.1998), and that there was no evidence of that fact such that the trial court erred in failing to sustain his motion for judgment of acquittal as to all three counts.

The State contends that the evidence was sufficient for the jury to find that the touchings alleged in the information, as to all three counts charged, occurred underneath the victim's clothing. In that regard, the State points to the testimony of the victim's mother, Marjorie Robinson, concerning the June 7, 1999, incident, and M.K.R.'s videotaped statements to Julie Donelan concerning the other incidents alleged to have occurred between April 1998 and May 1999.

At trial, Mrs. Robinson was questioned extensively on direct and cross-examination about what she observed on June 7, 1999. Under that line of questioning, she testified that upon walking into the appellant's bedroom that night, she saw the appellant's hand "[u]p the back part of [M.K.R.'s] shorts in between her thighs" and that he "was playing with her private parts." Mrs. Robinson then testified that she got M.K.R. out of the appellant's bedroom and took her downstairs. Once downstairs, Mrs. Robinson questioned M.K.R. as to whether the appellant had done this before, and, if he had, where on her body she had been touched. Mrs. Robinson testified that M.K.R. told her that this had happened before. In regard to Mrs. Robinson's question as to where

the appellant had previously touched her, M.K.R. pointed to "her crotch area" and "her breasts."

M.K.R. testified, in pertinent part, under cross-examination by the defense:

Q: Okay. Can you tell me what the private areas are or what you call them? Let me just tell you it's okay to say whatever words you use in this courtroom. You're not going to get in trouble or anything, okay. Can you tell me what the private parts are?

A: Between my legs, my chest and my butt.

Q: Okay. Has anyone ever touched you in those places?

A: Yeah.

Q: Who was that?

A: My dad.

Q: Which of those places did he touch you in?

A: Between my legs, my chest and my butt.

Q: Okay. And what did he touch you in those three places with?

A: His hand.

In addition, the victim testified as to two specific occasions when the appellant had touched her breasts with his hand. With respect to what had occurred in the appellant's bedroom on June 7, 1999, she testified that the appellant touched her "leg and then went up to [her] butt."

In addition to the testimony of Mrs. Robinson and the victim, Officer Christiansen and Julie Donelan testified as to what the victim told them with respect to the appellant's touching her. Officer Christiansen testified that when she spoke with M.K.R. about what had occurred on June

---

**2.** In 2002, the Missouri General Assembly amended the definition of sexual contact, inserting, after "female person," the language "or such touching through the clothing."

Thus, any touching, as described in § 566.010(3), occurring either under or through the clothes of the victim would now constitute "sexual contact."

7, 1999, M.K.R. told her that she fell asleep watching television, and, when she awoke, the appellant was touching her "private parts," which she identified by pointing to her chest and between her legs. Donelan, who conducted a videotaped interview with the victim, testified that the victim told her, *inter alia*, that on June 7, 1999, the appellant was touching the "outside of her leg" with his hand and that his leg touched her vagina.

Although the testimony from Mrs. Robinson, the victim, Officer Christiansen, and Donelan established that the appellant touched the victim's vagina under her clothing with respect to the June 7, 1999, incident, their testimony failed to establish that the appellant touched the victim's breasts with his mouth and his hands under her clothes, as charged in Counts I and III. However, in M.K.R.'s videotaped interview with Donelan, which was admitted at trial, along with the transcript thereof, she explained in detail how the appellant had touched and kissed her breasts under her clothes. With respect to the incident charged in Count I, which was alleged to have occurred sometime between April 1998 and May 1999, the victim told Donelan under questioning by her:

Q: And tell me what happened.

A: I was watching TV laying on my side and he just started rubbing across my chest.

Q: Okay. What was he rubbing across your chest with?

A: His hands.

Q: Okay. And was this over clothes or under clothes?

A: Under clothes.

Q: How did he get it under your clothes?

A: He lifted my shirt up.

And, as to the incident charged in Count III, which allegedly occurred sometime in January 1999, M.K.R. told Donelan:

Q: ... You said that ... that he kissed you. Did he kiss you any place besides your mouth?

A: No.

Q: Okay.

A: I mean yeah. Right on my boobs.

Q: On your boobs. Tell me about that.

A: He'd start rubbing in it and then kissed it.

Q: And how would he kiss it?

A: Like my mom would kiss me.

Q: Like your mom would kiss you?

A: On my cheek.

Q: On your cheek but he would do that on your boobs?

A: ... uh ... huh ...

Q: Okay. Would it be on your clothes or under your clothes?

A: Under my clothes.

Based on the evidence presented, we agree with the State that it was sufficient to convict the appellant on all three counts.

Point denied.

## II.

In Point II, the appellant claims, as to his conviction under Count II only, that the trial court erred in preventing him from introducing, as substantive evidence, alleged prior inconsistent statements of the victim, concerning the June 7, 1999, incident, contained in her deposition because it was mandated under § 491.074.[3]

---

**3.** Although the appellant actually referred to § 471.074 in his point relied on, inasmuch as no such section currently exists, we assume that the appellant was referring to § 491.074,

which provides that: "[n]otwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of a criminal offense

He contends that the excluded statements would have refuted the State's evidence that the charged touching, with respect to Count II, occurred underneath the victim's clothing.

The State contends that the appellant abandoned his claim in this point in that: (1) in violation of Rule 84.04(d)(5),[4] he failed to include any relevant authority supporting his argument or explain why none exists; and (2) in violation of Rule 84.04(e), he failed to develop the claim raised in his point relied on in the argument section corresponding with this point relied on. While the appellant's point relied on is not a model of draftsmanship, when read with the argument thereon, it is sufficient to apprise us of the appellant's claim of error such that we can adequately review the issues raised in the point in a manner contemplated by Rule 84.04.

As part of his defense, the appellant sought to read to the jury portions of M.K.R.'s deposition testimony concerning the June 7, 1999, incident. The State objected. Although not specifically citing § 491.074, the appellant argued that the victim's deposition testimony was admissible and was relevant in that it was inconsistent with the victim's testimony at trial. The trial court sustained the State's objection. The deposition testimony in question reads:

Q: When you were in your dad's bedroom that night and your mom came to the door, was the door open?

A: Yes.

Q: Were the lights on?

A: No.

Q: Was the TV on?

A: Yes.

Q: And what was your dad doing at that time your mom came in?

A: He said, "I didn't do it. I don't know what you're talking about." Then my mom said, "Get out of the house."

Q: Okay. Then what he said—but did he have his hand on you when your mom came into the bedroom?

A: Yes.

Q: Where did he have his hand on you?

A: My thigh.

Q: Okay. Now can you show me where you say thigh, where on your thigh did he have his hands?

A: About right here.

Q: You're showing the outside of your thigh; is that correct?

A: But he had his hand up my shorts.

Q: When you say he had them up your shorts, was it up the leg of your shorts?

A: Yes.

Q: So he had them up the leg of your shorts and he had his hand on the outside of your thigh; is that correct?

A: Yes.

Q: So he was touching the outside of your leg; is that correct?

A: I'm kind of getting confused. He had one hand on the inside of my shorts touching my skin and the other hand was around me.

Q: Was around you around your waist, your neck, your back, where around you?

A: My waist.

Q: What was that hand touching? What part of your body was that hand touching?

A: My side.

shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement."

4. All rule references are to the Missouri Rules of Civil Procedure (2002), unless otherwise indicated.

Q:  Your side?

A:  Yes.

■ The State contends, *inter alia*, that even if it was error for the trial court to exclude the victim's deposition testimony, it was not reversible error in that there was no prejudice to the appellant, *see State v. Storey*, 40 S.W.3d 898, 903 (Mo. *banc* 2001) (stating that for there to be reversible error there must be a showing of prejudice), in that the deposition testimony of the victim sought to be introduced was at best cumulative of Donelan's and M.K.R.'s testimony. "When improperly admitted evidence is merely cumulative of other evidence properly admitted at trial, its admission is not prejudicial, reversible error, unless it is outcome determinative." *State v. Bell*, 62 S.W.3d 84, 92 (Mo.App. 2001) (*citing Moss v. State*, 10 S.W.3d 508, 512 (Mo. *banc* 2000)).

■ At trial, the appellant sought to introduce the victim's deposition testimony as to what had occurred on the night of June 7, 1999, specifically her testimony that the appellant had only touched her "outer thigh" with his hand on this occasion. However, it appears that M.K.R.'s deposition testimony as to where the appellant had touched her that night was cumulative to trial testimony from Donelan and the victim. Donelan testified at trial that the victim told her during their videotaped interview that with respect to the incident in the appellant's bedroom on June 7, 1999, the appellant had only touched her outer thigh with his hand. In addition, the videotape of the victim's interview, during which she made this statement to Donelan, was played for the jury. As such, the victim's deposition testimony that the appellant touched her outer thigh on June 7, 1999, was merely cumulative to other evidence at trial, and, thus, the trial court's exclusion of her deposition testimony did not constitute reversible error.

Point denied.

## Conclusion

The circuit court's judgment convicting the appellant of three counts of child molestation in the first degree is affirmed.

SMART and HARDWICK, JJ., concur.