**STATE of Missouri, Respondent,**

v.

**Virgil James KELSO, Appellant.**

**No. WD 74134.**

Missouri Court of Appeals,
Western District.

Feb. 5, 2013.

Chris Koster, Attorney General, Jessica P. Meredith, Assistant Attorney General, Jefferson City, MO, for Respondent.

Margaret M. Johnston, Assistant Public Defender, Columbia, MO, for Appellant.

Before Division Two: LISA WHITE HARDWICK, Presiding Judge, and JAMES M. SMART, JR., and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judges.

Virgil Kelso appeals his conviction and sentence for first-degree child molestation based on his act of having the victim (a child less than fourteen years of age) place a condom on Kelso's penis. Kelso claims that the evidence was insufficient to support the jury's verdict finding him guilty in that the State alleged, but failed to prove, that Kelso caused the victim's hand to touch his genitals "through the clothing" insofar as a condom does not constitute "clothing." Because the State was not required to prove the existence of clothing in order to establish Kelso's guilt of child molestation, the question of whether a condom constitutes clothing is irrelevant. We affirm.

### Factual Background [1]

In 2009, the victim lived in a trailer in Saline County with her mother, her two siblings, and Kelso (her mother's boyfriend). When the victim was born, on November 5, 1996, Kelso was married to the victim's maternal grandmother. Kelso

---

1. We view the evidence in the light most favorable to the verdict. *State v. Winfrey,* 337 S.W.3d 1, 3 (Mo. banc 2011).

and the victim's mother later had an affair, were discovered by their respective spouses, and then moved in together with the victim and her siblings.

In the latter part of 2009, Kelso began having "sex talks" with the victim while her mother was at work. During these talks, Kelso advised the victim that if she ever wanted to have sex, she should "come to him." He also discussed the use of condoms and the differences between protected and unprotected sex. Kelso indicated to the victim that "when a guy is either hard or . . . wanting sex, they would either jack off or if like even a woman or anybody would touch it, like the come would come out." Kelso would also describe various sexual positions to the victim and then have her act them out with him while she was clothed and he was in his boxers. He also described a "blow job" to the victim.

Kelso wrote a note to the victim, asking her to perform oral sex on him. When the victim asked why, Kelso told the victim that her mother would not do it, and he had "needs." The victim refused. Kelso subsequently destroyed the note.

On another occasion, Kelso bought thong underwear for the victim and asked her to model them, but she refused. Kelso also frequently walked into the bathroom while the victim was bathing.

Around this same time period, Kelso masturbated twice in front of the victim. At one point, he gave the victim a condom and had her put it on a can of mousse. Kelso looked at it and told the victim she did it wrong. A couple of days later, Kelso gave the victim another condom and told her to put it on his penis. Kelso pulled his pants down, and the victim complied with his demand, but he told her again that she did it wrong. The next morning, Kelso approached the victim again and demanded that she put a condom on him, but this time, he first showed her how to do it.

The victim then put a condom on Kelso's penis, Kelso advised her that she did it right, and Kelso ejaculated into the condom.

Shortly after the last condom incident, the victim contacted her father while she was at a neighbor's house and told him about what Kelso had been doing. The neighbor advised the victim's mother, who then confronted Kelso about the allegations, and Kelso indicated that he had showed the victim how to put a condom on a can of mousse, but he denied everything else. The victim's mother then contacted Deputy Brad O'Neal of the Saline County Sheriff's Office, and he contacted the Child Abuse and Neglect Hotline. Misty Allen, an investigator for the Children's Division arranged a meeting with the victim and her mother. During this meeting, the victim revealed Kelso's actions and provided Allen with the thong underwear Kelso had given her. Allen arranged for the victim to be interviewed at Child Safe in Sedalia, Missouri.

Deputy O'Neal made contact with Kelso, and Kelso agreed to be interviewed. Kelso denied all allegations of sexual impropriety with the victim. Deputy O'Neal then emptied out a bag containing condoms he had found in the victim's home, along with the thong underwear the victim had provided, and asked Kelso to explain the items. Kelso began shaking uncontrollably and indicated that he no longer wished to speak without the presence of an attorney.

Kelso was subsequently charged with first-degree child molestation for subjecting the victim, a child less than fourteen years of age, to sexual contact. At trial, Kelso testified in his own defense and denied all of the allegations, again claiming that he used a can of mousse to teach the victim how to use a condom. Kelso admit-

ted purchasing the thong underwear, but claimed he bought them for the victim's mother. The victim's mother testified that the victim wore a size four or five, but that she wore a size seven or eight. Kelso acknowledged that the underwear he purchased were not the victim's mother's size, but indicated that he bought them smaller "as an incentive for her to get back down to the weight she wanted to."

During the instruction conference, the State submitted Instruction 6, the verdict-director, which directed the jury to find Kelso guilty if they found that he caused the victim to touch his genitals through the clothing. The prosecutor argued to the jury that the incident at issue was "the second time the condom went on when the Defendant ejaculated as a result of this little girl being induced to handle his genitals for him." The prosecutor further pointed out the language of the verdict-director indicating that the touching was "through [the] clothing," and argued that "[a] condom is clothing." Kelso argued to the jury that no touching occurred, but even if it did, a condom does not constitute clothing, and the State failed to prove the existence of any clothing.

The jury found Kelso guilty and recommended that he serve ten years in the Department of Corrections. The court followed the jury's recommendation and sentenced Kelso to a ten-year term of imprisonment. Kelso appeals.

## Standard of Review

Kelso raises a single point on appeal; he argues that the evidence was insufficient to support his conviction. "In determining the sufficiency of the evidence to support a conviction, we accept as true all evidence favorable to the State, viewing all reasonable inferences most favorable to the verdict and disregarding all evidence and inferences to the contrary." *State v.*

*Bayless,* 369 S.W.3d 115, 118 (Mo.App. W.D.2012). "Our review is limited to determining whether there is sufficient evidence to permit a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* "The reliability, credibility, and weight of witness testimony is for the jury to decide[,]" and we will "not substitute our judgment for that of the jury." *Id.*

## Analysis

In his sole point on appeal, Kelso claims that by including language in the verdict-director indicating that the victim touched Kelso's genitals "through the clothing," the State was required to prove the existence of "clothing" in order to establish Kelso's guilt of the charged offense. He then argues that, because the evidence established that the victim touched Kelso's genitals only through a condom, and a condom does not constitute "clothing," the evidence was insufficient to support his conviction. We disagree.

### A. The presence or absence of clothing during a prohibited touching is not an element of first-degree child molestation.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary *to constitute the crime* with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (emphasis added). In determining what the necessary facts are, our courts look to the criminal statute that the defendant has been charged with violating. *State v. Taylor,* 238 S.W.3d 145, 148 (Mo. banc 2007).

Kelso was charged with first-degree child molestation, which is defined as "subject[ing] another person who is less than fourteen years of age to sexual con-

tact." § 566.067.1.[2] "Sexual contact" is defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person...." § 566.010(3). Thus, the facts necessary to support a conviction of first-degree child molestation are: (1) a prohibited touching; (2) of a child less than fourteen years of age; (3) done with the intent to arouse or gratify sexual desire.

Instruction 6, the verdict-director, advised the jury to find Kelso guilty if it found the following beyond a reasonable doubt:

> First, that between the dates of September 01, 2009 and November 28, 2009, in the County of Saline, State of Missouri, the defendant caused [the victim] to touch defendant's genitals through the clothing, and

> Second, that defendant did so for the purpose of arousing or gratifying defendant's sexual desire or the sexual desire of [the victim], and

> Third, that [the victim] was a child less than fourteen years old....

**2.** All statutory references are to RSMo Cum. Supp.2008, unless otherwise noted.

**3.** For example, in *Kamaka*, the defendant was charged with promoting child pornography, which can be committed by manufacturing, issuing, selling, providing, mailing, delivering, transferring, transmuting, publishing, distributing, circulating, disseminating, presenting, exhibiting, or advertising child pornography, or offering or agreeing to do the same, "by any means including a computer." § 573.010(15). Because of the various methods by which an individual could "promote" child pornography, the State had to elect which of the methods the defendant had engaged in; in *Kamaka*, the State elected to

■ Kelso argues that the first element (the prohibited touching) can be committed in one of two ways: either skin-to-skin contact, or contact through the clothing. He then argues that because the State chose to submit the charge to the jury as contact "through the clothing," the State had to prove the existence of clothing between the victim's hand and Kelso's penis at the time of the touching. And because the only thing between the victim's hand and Kelso's penis was a condom, which Kelso argues did not constitute clothing, he claims that the State's evidence was insufficient to support his conviction. But because the existence of clothing is not an element of first-degree child molestation, we do not reach Kelso's argument regarding the nature of a condom.

■ When a criminal statute provides for various methods of commission of an element, the State is required to select a method and is then held to proof of the method charged as to that element. *See State v. Kamaka*, 277 S.W.3d 807, 813 (Mo.App. W.D.2009).[3] The purpose of this requirement is to preserve a defendant's right under the Missouri Constitution to jury unanimity. *See, e.g., State v. Celis–Garcia*, 344 S.W.3d 150, 155 (Mo. banc 2011) ("For a jury verdict to be unanimous, 'the jurors [must] be in substantial

charge the defendant with disseminating child pornography. *Kamaka*, 277 S.W.3d at 813. Similarly, in *Peiffer v. State*, 88 S.W.3d 439 (Mo. banc 2002), the defendant was charged with first-degree tampering, which could be committed by knowingly receiving, possessing, selling, altering, defacing, destroying, or unlawfully operating "an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle without consent of the owner thereof." § 569.080.1(2). In *Peiffer*, the State elected to charge the defendant with tampering by possessing an automobile without the owner's consent. *Peiffer*, 88 S.W.3d at 444.

agreement as to the defendant's acts, as a preliminary step to determining guilt.'" (quoting 23A C.J.S. *Criminal Law* § 1881 (2006))). Of course, the only acts upon which the jury must unanimously agree are the facts necessary to constitute the crime. *See Winship,* 397 U.S. at 364, 90 S.Ct. 1068; *see also State v. Bullock,* 179 S.W.3d 413, 416 (Mo.App. S.D.2005) (rejecting defendant's sufficiency challenge to his conviction of statutory sodomy based upon language in the verdict-director alleging penetration of the victim's vagina by the defendant's tongue, as the definition of "deviate sexual intercourse" did not require proof of such penetration). Thus, it is irrelevant whether the jurors unanimously agree as to a fact non-essential to the commission of the crime.

■ Although the definition of "sexual contact" provides for various methods of commission regarding the type of touching (e.g., hand-to-genital, hand-to-anus, hand-to-breast, or genital-to-body), the presence or absence of clothing during such touching is inconsequential. The only method the State must elect is the type of touching; the State need not elect or prove whether clothing was present during such touching. And here, the State elected to establish hand-to-genital touching. That was all that was required.

A similar issue was addressed by the Southern District in *State v. Patton,* 229 S.W.3d 631 (Mo.App. S.D.2007). In *Patton,* the defendant was charged with first-degree child molestation by touching the vagina of a child less than fourteen years of age with his hand. *Id.* at 633–34. Following a bench trial, the court found the defendant guilty of touching the victim's vaginal area through her clothing. *Id.* at 634. On appeal, the defendant argued that because the State charged him with skin-to-skin contact, but proved contact only through the clothing, the evidence was insufficient to support his conviction. *Id.* at 632, 634–35. Like Kelso, the basis for the defendant's argument in *Patton* was that "pursuant to section 566.010(3), touching directly with the hand and touching through the clothing are two separate and distinct ways of committing 'sexual contact' for purposes of section 566.067...." *Id.* at 632.

The Southern District rejected the defendant's argument, noting that case law interpreting the definition of "sexual contact" has consistently "held that the manner of touching, whether it occurs above or beneath the clothing, is entirely inconsequential as long as there is touching of the genitals for the purpose of sexual arousal." *Id.* at 635. The Southern District determined that "it does not matter that the touching occurred through the clothing rather than underneath the clothing, because *the crime can only be committed in one way: touching with the purpose to arouse or gratify sexual desire.*" *Id.* at 637 (emphasis added).

In reaching its holding, the Southern District relied upon an earlier decision from the same district of this court, *State v. Potter,* 747 S.W.2d 300 (Mo.App. S.D. 1988). In *Potter,* the defendant was convicted of first-degree sexual abuse, which required the presence of "sexual contact" as defined in section 566.010(3). *Id.* at 302. The verdict-director instructed the jury to find the defendant guilty if the defendant touched the victim's genitals or anus *either* "through the clothing or against the skin." *Id.* at 306 (emphasis in original omitted). The defendant argued that this instruction was improper because the State was required to elect between the two methods. *Id.* The court on appeal rejected his claim, noting that

[t]he gravamen of the offense was the touching of the genitals for the purpose of sexual arousal. Whether the touching

was through the clothing or otherwise was inconsequential. Neither of the specific findings were essential to establish the offense.

*Id.*

Here, Kelso's claim is premised on the notion that the State was required to elect between contact either directly with the skin or through the clothing. In support of this claim, he relies on *State v. Miller,* 372 S.W.3d 455 (Mo. banc 2012).

In *Miller,* a first-degree child molestation case, the Court found instructional error based upon a paragraph in the verdict-director instructing the jury to find the defendant guilty if they found beyond a reasonable doubt that the defendant had touched the victim's genitals "through the clothing." *Id.* at 470–71. The Court determined that error existed because, at the time of the defendant's conduct (December 1997–December 1998), the definition of "sexual contact" did not include the "or such touching through the clothing" language. *Id.* at 471. The opinion states: "[t]hat specific manner of engaging in sexual contact was not added to the definition of 'sexual contact' until 2002." *Id.* Kelso relies on this language to support his claim that touching through the clothing is a specific method of commission the State must elect and prove. We do not read *Miller* this way.

The definition of "sexual contact" contained the phrase, "or any such touching through the clothing," from the time of its enactment in 1977 until January 1, 1995, when an amendment took effect removing that language. S.B. 693, 87th Gen. Assemb., 2d Reg. Sess. (Mo.1994). Before the amendment, the statute was consistently interpreted to mean that the presence or absence of clothing was irrelevant to the crime. *See Patton,* 229 S.W.3d 631, 635 (Mo.App. S.D.2007) (discussed *supra* ). After the amendment, the statute was interpreted to mean that evidence of touching through the clothing did not support a finding of sexual contact. *See, e.g., State v. Hale,* 285 S.W.3d 393 (Mo.App. E.D. 2009); *State v. Robinson,* 108 S.W.3d 689, 693–94 (Mo.App. W.D.2003); *State v. Wallace,* 976 S.W.2d 24, 25 (Mo.App. E.D. 1998). But this does not necessarily mean that the State had to prove skin-to-skin contact.[4] There are any number of materials that could be present during a prohibited touching (like a condom), some of which could constitute "clothing," and some of which may not. The 1995 amendment did nothing more than increase the State's burden regarding proof of "sexual contact" by removing the possibility that *clothing* (as opposed to some other material) could be present during a prohibited touching.[5] Thus, when the jury in *Miller*

---

4. In *Patton,* the Southern District of our Court interpreted *Robinson* and *Wallace* as requiring, "direct contact, *underneath* the clothing." 229 S.W.3d at 634–35 (emphasis in original). To the extent that this interprets *Robinson* and *Wallace* as holding that between January 1995 and 2002, the definition of "sexual contact" required skin-to-skin touching, the *Patton* court read these cases too broadly. The *Robinson* court found that evidence that the defendant put his hand up the back of the victim's shorts in between her thighs and "was playing with her private parts," was sufficient to prove sexual contact. 108 S.W.3d at 693–94. In *Wallace,* the State conceded that there was no evidence of

touching "except through clothing," and thus the defendant was not guilty of a crime that had sexual contact as an element. 976 S.W.2d at 25. Neither case addressed whether touching through material other than clothing constituted "any touching" and thus they should not be read to define "sexual contact" as requiring skin-to-skin touching.

5. Missouri's definition of "sexual contact" is based, in part, on The Model Penal Code. The Model Penal Code defines "sexual contact" as "any touching of the sexual or intimate parts of another person for the purpose of arousing or gratifying the sexual desire." MODEL PENAL CODE § 213.4. No mention is made of cloth-

made the factual finding that the defendant touched the victim "through the clothing," the jury necessarily found that the State failed to prove its case. *See Miller*, 372 S.W.3d at 470–71. We do not believe that *Miller* stands for the proposition that the presence of clothing, if alleged, is an element of sexual contact that the State must prove. In 2002, when the "or such touching through the clothing" language was added back into the definition of sexual contact, it merely removed the State's burden, under the prior amendment, to disprove the presence of clothing; it did not create a new method of commission.

As is evident from the holdings in both *Patton* and *Potter*, the inclusion of the phrase "or such touching through the clothing" in the definition of "sexual contact" does not establish a separate method of commission. The inclusion of this phrase does nothing more than broaden the definition of sexual contact to include prohibited touching, even when it occurs through the clothing. Because the presence or absence of "clothing" during the touching is "inconsequential," the State was under no duty to prove that clothing was present. To hold otherwise would lead to absurd results.[6] *See, e.g., State v. Benn*, 341 S.W.3d 203, 208–09 (Mo.App. W.D.2011) (rejecting defendant's argument that the definition of sexual contact did not include touching with the defendant's geni-

---

ing. States adopting the model language verbatim have interpreted the definition as covering a spectrum of possibilities ranging from skin-to-skin contact through contact over clothing. *Compare State v. Brown*, 420 N.W.2d 5, 6–7 (N.D.1988) (relying on the dictionary definition of "touch" in holding that the definition of "sexual contact" precluded *any* touching, regardless whether clothing was present, because a contrary conclusion would produce an absurd result), *with State v. Rodgers*, 68 Haw. 438, 718 P.2d 275, 278 n. 8 (1986) (The court held that the definition of "sexual contact" did not include touching through the clothing, because, unlike other states that mentioned clothing in the definition, Hawaii did not do so. The court noted, however: "We do not suggest the offense is committed only when there is 'skin-to-skin' contact. If the 'sexual or other intimate part' rather than clothing is actually touched, even with a gloved hand, we would not hesitate to rule 'sexual contact' has occurred."), *superseded by statute*, Haw.Rev.Stat. § 707–700 (1987), *as recognized in State v. Richie*, 88 Hawai'i 19, 960 P.2d 1227 (1998) (noting that in response to *Rodgers*, "the legislature amended HRS § 707–700 to include touching through the clothing[;] ... [t]hus, even if there were any ambiguity in the definition of 'sexual contact,' the history of the statute indicates that the legislature specifically intended to prohibit touching through clothing").

6. Because the phrase, "any touching," is extremely broad, the argument that the statute covers only two scenarios (skin-to-skin or through clothing) is a false dichotomy. Accepting this premise leads to the very argument Kelso advances here: a court must define whether any given material present between the defendant and the victim during the prohibited touching constitutes "clothing." Attempting to craft a workable definition would undoubtedly lead to absurd results requiring the court to look not only to the make-up of the material (e.g., wool, cotton, latex, etc.) but also to the purpose for which it was used (e.g., to protect the skin, to conceal the body, to create warmth, etc.). In some instances, for example, a bed sheet might not constitute clothing, such as where it is simply used to cover a clothed person during sleep. But in other instances, it might be considered clothing, such as during a "toga party" or even if used as a Halloween costume. It would be an absurd result, indeed, if a prohibited touching occurred in either scenario, but constituted a crime in only one. The definition of "sexual contact" focuses on "any touching"; it does not focus on the presence or type of any given material between the individuals during that touching. And this focus is why numerous cases have indicated that the presence or absence of clothing is "inconsequential" and that the "gravamen" of the offense is the prohibited touching.

tals through the victim's clothing because such an interpretation would lead to the absurd result of allowing one to legally touch another person with his genitals for the purpose of sexual gratification, so long as the other person was clothed at the time). The fact of the matter is that Kelso caused the twelve- or thirteen-year-old victim to touch his penis for his own sexual gratification, and that action is prohibited by section 566.067, regardless of whether Kelso was naked, clothed, covered by a sheet, or wearing a condom at the time of the touching. Consequently, whether a condom constitutes "clothing" is irrelevant, and we need not decide this question.

**B. The State was not required to prove the existence of clothing simply because it was included in the verdict-director.**

■ Even though the presence or absence of clothing is not an element of first-degree child molestation, Kelso claims that by placing the language referring to clothing in the verdict-director, the State assumed the burden of proving that assertion beyond a reasonable doubt. In support of this claim, he relies on *State v. Hickman*, 135 Wash.2d 97, 954 P.2d 900 (1998).

In *Hickman*, the defendant was charged with insurance fraud, and at trial, the verdict-directing instruction given to the jury alleged that the crime occurred in Snohomish County, Washington. *Id.* at 901. On appeal, the defendant claimed that, by including venue in the verdict-director, the State had assumed the burden to prove venue but failed to do so. *Id.* at 902. While acknowledging that venue was not an element of the charged crime, the Washington Supreme Court determined that because the State had agreed to a verdict-directing instruction that included a requirement that the jury find "that the act occurred in Snohomish County, Wash-

ington," the State then assumed the burden of proving that assertion. *Id.* at 902, 904. The court held that "[i]n criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instruction." *Id.* at 902.

While certainly *Hickman* supports Kelso's assertion, Kelso fails to recognize that *Missouri* law is directly contrary to Washington law on this issue. In *State v. Taylor*, 238 S.W.3d 145 (Mo. banc 2007), the defendant raised a remarkably similar claim to that raised by the defendant in *Hickman*. He claimed that the inclusion of venue in the verdict-director placed a burden upon the State to prove venue as an element of the crime with which he was charged—forcible rape. *Id.* at 148. The Missouri Supreme Court disagreed. The Court first recognized that "the state must prove beyond a reasonable doubt 'every fact necessary to constitute the crime with which [the defendant] was charged.'" *Id.* (quoting *State v. Erwin*, 848 S.W.2d 476, 481 (Mo. banc 1993)). But, in examining the forcible rape statute and finding no reference to venue within it, the Court determined that the State was not required to prove venue because it was not an element of forcible rape. *Id.* The Court recognized that, although the Missouri Approved Instructions are presumed to be correct, where an instruction conflicts with the substantive law, the substantive law controls. *Id.* The Court then held that "[i]nsofar as the MAI–CR 320.01 makes venue an element of the offense of rape, it is incorrect." *Id.*

As *Taylor* demonstrates, simply including venue in the instruction did not render it an element that the State was then required to prove beyond a reasonable doubt. This holding is consistent with the long line of cases holding that "[b]ecause

time is not an essential element of [sex offenses], 'the state is not confined in its evidence to the precise date stated in the information, but may prove the offense to have been committed on any day before the date of the information and within the period of limitation.'" *State v. Carney*, 195 S.W.3d 567, 571 (Mo.App. S.D.2006) (quoting *State v. Mills*, 872 S.W.2d 875, 878 (Mo.App. S.D.1994)). Like venue, a general time period is included in the Missouri Approved Instruction for first-degree child molestation. MAI–CR 3d 320.17. But its inclusion in the instruction does not place a burden upon the State to prove the precise time period alleged. *Carney*, 195 S.W.3d at 571–72 (rejecting defendant's claim on appeal that the State failed to prove that the alleged act of sodomy occurred within the time period specified in the verdict-director because time was not an essential element of the crime of sodomy). Thus, like venue and the alleged time of commission, because the presence of clothing is not an element of the crime of first-degree child molestation, the State was not required to prove it beyond a reasonable doubt.

Point denied.

### Conclusion

Because the State presented sufficient evidence to support each of the essential elements of the crime of first-degree child molestation, Kelso's conviction and sentence are affirmed.

JAMES M. SMART, JR., Judge, concurs.

LISA WHITE HARDWICK, Presiding Judge, concurs in separate opinion.

LISA WHITE HARDWICK, Judge.

I concur in the majority's decision to affirm Kelso's conviction for first-degree child molestation. However, I write separately to address the sole issue raised in Kelso's appeal. Kelso contends the evidence was insufficient to support his conviction because the State failed to prove that he caused the victim to touch his genitals "through the clothing," insofar as a condom does not constitute "clothing." Because I conclude that touching through a condom is touching through the clothing for purposes of sexual contact as defined in Section 566.010(3), I see no need to reach the issue raised in the majority opinion as to whether the State must prove one of two distinct methods of committing the offense: skin-to-skin contact or through the clothing.[1]

To convict Kelso of first-degree child molestation, the State was required to prove that he "subject[ed] another person who is less than fourteen years of age to sexual contact." § 566.067.1. Sexual contact is defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." § 566.010(3). Here the State satisfied the requirement of "touching through the clothing" by presenting evidence that Kelso directed the victim to place a condom on his penis. Kelso argues that under the ordinary use of the word "clothing," a condom is not clothing.

1. Although the issue is unnecessary to resolve this appeal, I question whether Section 566.010(3) can be fairly interpreted to comprehend anything other than skin-to-skin contact or contact through the clothing, given the decisions in *State v. Miller*, 372 S.W.3d 455 (Mo. banc 2012), *State v. Patton*, 229 S.W.3d 631, 637 (Mo.App.2007), and *State v. Robinson*, 108 S.W.3d 689, 693 n. 2 (Mo.App.2003), as well as the statutory history of Section 566.010(3) and related statutes, including Section 566.090.1, RSMo 1994.

Although "clothing" is not defined under the criminal code, it is defined elsewhere in the Missouri Revised Statutes. As it pertains to a sales tax holiday, "clothing" is defined as "any article of wearing apparel, including footwear, intended to be worn on or about the human body." § 144.049.1(1). "Apparel" is defined as "something that covers or adorns, esp. outer garments or clothing." COLLINS ENGLISH DICTIONARY—COMPLETE & UNABRIDGED (Harper Collins Pub. 10th ed.) (accessed at http://dictionary.reference.com/browse/apparel December 4, 2012).

A condom, while admittedly not something routinely considered "clothing," appears to meet the definition insofar as it is "something that covers" and is "worn on or about the human body." It is worn for protective or preventative purposes, much like a raincoat or glove—both of which are common euphemisms for condoms. Kelso's penis was clothed in a condom at the time of the charged offense. Thus, the State's evidence that Kelso had the victim touch his penis while it was covered with a condom was sufficient to support his conviction for first-degree child molestation. I would affirm the conviction on this basis.