

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )
                     )
            Respondent, )
                     )
v.                   )     No. SC93745
                     )
THOMAS A. ESS,        )
                     )
            Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF MONROE COUNTY
The Honorable Rachel L. Bringer, Judge

*Opinion issued January 13, 2015*

Thomas A. Ess (hereinafter, "Ess") appeals from the circuit court's judgment convicting him of two counts of first-degree statutory sodomy, section 566.062, RSMo 2000[1], two counts of second-degree statutory sodomy, section 566.064, and one count of attempted first-degree child molestation, section 566.067. Ess raises three points on appeal, alleging juror misconduct, instructional error, and insufficient evidence to support two of his convictions. This Court holds one juror committed misconduct through the intentional nondisclosure of a material fact related to the lawsuit, specifically that the juror formed an opinion about Ess's guilt or innocence prior to deliberations in direct contravention of the circuit court's instructions. This Court further holds there was insufficient evidence to

---

[1] All statutory references are to RSMo 2000 as supplemented.

convict Ess of attempted first-degree child molestation.  The circuit court's judgment is reversed, and the case is remanded.[2]

## Factual and Procedural History

Ess was charged with multiple counts of first-degree statutory sodomy, second-degree statutory sodomy, and one count of first-degree child molestation for acts alleged to have occurred against his stepsons, W.L. and B.L., at various times between 1995 and 2003. W.L. and B.L. testified at trial, detailing various acts of sodomy.  Ess testified and denied all of the allegations, explaining that his relationship with his stepsons was troubled and deteriorated during their teenaged years.  The jury convicted Ess of five of the six counts submitted to the jury.[3]

In his motion for a new trial, Ess alleged, *inter alia*, that he was entitled to a new trial based on misconduct by Venireperson No. 3, who ultimately served on Ess's jury as Juror No. 3.  Ess alleged Juror No. 3 committed misconduct by announcing during a lunch recess during voir dire that "this is an open and shut case" after the circuit court instructed the panel members they were not to discuss the case or form an opinion before the case was submitted.  Ess argued this comment revealed a bias existing at the outset of trial, which was not disclosed intentionally during voir dire and was communicated to others in violation of the circuit court's order.  Attached to Ess's motion was an affidavit from Venireperson No. 26, stating, "[d]uring a break taken before the end of jury selection, after the court admonished the panel not to discuss the case, I heard [Juror No.] 3 remark to other nearby

---

[2] This Court transferred this case after an opinion by the Missouri Court of Appeals, Eastern District.  Mo. Const. art. V, sec. 10.  Portions of the court of appeals opinion are incorporated without further attribution.

[3] The jury acquitted Ess of count III, attempted first-degree statutory sodomy, against W.L.

jurors that 'this is an open and shut case,' indicating to me that he believed [Ess] to be guilty." Venireperson No. 26's affidavit further indicated Juror No. 3 was told "shh" by another venireperson as if to admonish Juror No. 3 in accordance with the circuit court's instructions not to discuss the case.

The circuit court held an evidentiary hearing on Ess's motion.[4] Venireperson No. 26 testified he was sitting in the hallway outside of the courtroom on a bench after lunch when Juror No. 3 stated it was a "cut-and-dry [sic]" case. Venireperson No. 26 then corrected himself to state Juror No. 3's actual words were "open and shut." Venireperson No. 26 further testified Juror No. 11 made a "shh" sound after Juror No. 3 made the comment. Defense counsel attempted to elicit evidence about Venireperson No. 26's perceptions of Juror No. 3's comment, specifically whether Juror No. 3 favored the state or the defense. However, the circuit court sustained the prosecutor's objections, which were to a lack of

---

[4] The dissenting opinion claims this Court has granted Ess relief on claims he did not raise in his motion for new trial. The record supports a finding that the circuit court was apprised fully of the arguments presented below prior to issuing its ruling. In addition to Ess's motion, defense counsel filed suggestions in support of the motion and presented extensive argument on these claims at the evidentiary hearing. Defense counsel twice raised the issue regarding Juror No. 3's preconceived notions about the case. Defense counsel argued, "If someone had preconceived notions of the guilt of [Ess] in this case that they were to bring it up, they would be subject to disqualification as jurors if they had done so," and "This juror obviously had a preconceived notion and a bias that he failed to disclose to the [c]ourt and to the parties in the case …." Defense counsel also twice raised the issue of Juror No. 3's failure to comply with the circuit court's instructions, stating, "[W]e just put on evidence that [Juror No. 3] contrary to your admonition not only talked about the case, but clearly evidence of bias in favor of the state, did not disclose it to you or to me or to the state and ended up being on that jury …," and "[Juror No. 3] was violating your order about talking about the case …." At the conclusion of the evidentiary hearing, the circuit court acknowledged it reviewed the suggestions in support and all of the arguments presented. Accordingly, this Court has not convicted the circuit court of error it could not remedy, nor has it granted Ess relief on claims different than those presented to the circuit court.

foundation, speculation, and hearsay. Juror No. 11 also testified that he "shushed" Juror No. 3 and told him they were not to talk about the trial in the hall.

Following the evidentiary hearing, the circuit court overruled Ess's motion for new trial. In its written judgment, the circuit court found Ess failed to present any evidence from Juror No. 3 or any evidence regarding the context of Juror No. 3's statement, including any information about his mannerism, tone, or gestures when making the comment. The circuit court further found there was no evidence to show whether Juror No. 3 favored the state or the defendant. Ess appeals these convictions.

## Juror Misconduct

Ess claims the circuit court erred in failing to grant him a new trial on his claim of juror misconduct. Ess argues Juror No. 3 was not impartial because he formed a clear opinion on the case prior to hearing any testimony or argument, and it was never established Juror No. 3 could set aside his prior opinions regarding Ess's guilt and give him a fair trial. Ess claims Juror No. 3's participation as a juror violated his right to a fair trial, his right to due process, and sections 494.470.2 and 547.020(2).[5]

### *Standard of Review*

The parties disagree about the appropriate standard of review. Ess argues the circuit court's judgment should be reviewed for an abuse of discretion. The state argues Ess's

---

[5] Section 494.470.2 provides, "Persons whose opinions or beliefs preclude them from following the law as declared by the court in its instructions are ineligible to serve as jurors on that case." Section 547.020(2) states the circuit court may grant a new trial when there has been jury misconduct. Defense counsel mentioned section 547.020 to the circuit court during the evidentiary hearing on the motion for new trial, contrary to the dissenting opinion's claim that Ess failed to raise either of these statutes in conjunction with the motion for new trial.

4

claim is limited to plain error because his motion for a new trial was filed one day after the deadline set forth in Rule 29.11(b).[6]

Ess's motion for new trial was due on January 9, 2014. Defense counsel's secretary attempted to file the motion that day; however, the circuit clerk's office informed her that the motion could not be accepted because the accompanying affidavit did not include a notary's stamp. This issue could not be rectified until the following morning, January 10, 2014. At the evidentiary hearing on Ess's motion for new trial, defense counsel apprised the circuit court of what happened and asked that the new trial motion be deemed to have been filed on January 9th. The state took no position on the matter, stating that even if it were considered timely filed, it would not change the outcome. The circuit court sustained Ess's motion to reflect that his new trial motion was filed timely on January 9, 2014.

Generally, the circuit court has no authority to waive or extend the time for filing a motion for new trial beyond the time set forth in Rule 29.11(b). *State v. Bartlik*, 363 S.W.3d 388, 391 (Mo. App. E.D. 2012). Here, however, the circuit clerk refused Ess's filing in the absence of some clear prohibition in law, court rule, or specific court order. The circuit clerk was obligated to accept the filing, *see Vogl v. State*, --- S.W.3d --- *slip op.* 10 (No. SC93157) (Mo. banc 2014); Rule 43.02(b), and a party could move to have the pleading stricken if the defect, which was the missing stamp on the accompanying affidavit, was not cured. Here, Ess's counsel cured the defect, filed the motion as soon as possible, and sought

---

[6] Under Rule 29.11(b), a defendant has fifteen days in which to file a new trial motion, but the circuit court can grant up to ten additional days in which to file the motion. *State ex rel. Baker v. Kendrick*, 136 S.W.3d 491, 492 (Mo. banc 2004). The circuit court did so here, making the motion due on or before January 9, 2014.

relief from the circuit court after explaining the circuit clerk's actions. Accordingly, this Court finds the circuit court's order ruling Ess's motion for new trial was filed timely was not an abuse of discretion. Ess's juror nondisclosure claim will be reviewed for an abuse of discretion. *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 644 (Mo. banc 2013).

## *Quantum of Proof*

The state argues that even if this Court reviews Ess's claim for an abuse of discretion, it believes Ess failed to assert his juror misconduct claim properly because he did not present an affidavit or testimony from Juror No. 3. The state relies on the following statement from this Court's decision in *State v. Mayes*, 63 S.W.3d 615 (Mo. banc 2001): "In order to prove intentional concealment by a juror, the defendant must, at a minimum, allege intentional concealment in his motion for new trial and file an affidavit from the juror setting forth the facts surrounding the alleged concealment which reveals prejudice to the defendant." *Id*. at 626. The state contends that because Ess adduced testimony from Venireperson No. 26, and not from Juror No. 3, his claim must fail. The state's argument misinterprets this Court's holding in *Mayes*. In *Mayes*, the defendant failed to preserve the juror nondisclosure issue for review and was untimely in raising his claim. *Id*. at 624-25. The defendant failed to present testimony or an affidavit from the juror whose conduct was at issue; rather, he presented her jury questionnaire, which he contended impeached her voir dire testimony, thus demonstrating she committed misconduct. *Id*. This Court conducted plain error review and stated that even if the defendant's claims were raised timely, "a defendant alleging juror misconduct during voir dire must present 'evidence through

testimony or affidavits of *any juror, or other witness* either at trial or at the hearing on his motion for new trial.'" *Id*. at 625-26 (emphasis added). This Court went on to hold that the circuit court did not err in overruling the defendant's new trial motion because he "failed to offer either an affidavit or testimony of [the juror], *or other evidence*" of intentional nondisclosure and he failed to "call the juror *or otherwise establish*" sufficient facts to merit relief. *Id*. at 626 (emphasis added).

Here, neither party presented an affidavit or testimony from Juror No. 3 at the evidentiary hearing. While Juror No. 3's participation in the proceeding could have aided the circuit court in its fact-finding function and could have provided context to his comment, this Court's holding in *Mayes* does not foreclose a defendant from proving his or her claim in the absence of this evidence. The circuit court misapplied the law when it relied on language in *Mayes* taken out of context and overruled Ess's motion partially due to determining that he was required to file an affidavit from Juror No. 3 setting forth facts surrounding the alleged concealment to support his claim and prove prejudice.[7]

The state next contends Ess failed to present evidence that Juror No. 3 made the alleged comment at all. The circuit court found Ess failed to present any evidence from Juror No. 3 and, ultimately, held Juror No 3 held no bias against Ess. This holding is not

---

[7] Contrary to the dissenting opinion's assertion, a careful reading of the circuit court's judgment reveals that the circuit court did inaccurately rely on *Mayes* for the proposition that a defendant had to present an affidavit from the juror alleged to have committed the misconduct to prove his or her claim. After citing the misinterpreted language from *Mayes*, the very next sentence in the judgment states, "[Ess] presented no evidence from [J]uror [No. 3]." With respect to its finding regarding the lack of evidence concerning Juror No. 3's mannerisms, tone, and gestures, the circuit court reiterates, "No evidence was presented from [J]uror [No. 3]." Thus, while the circuit court's misapplication of *Mayes* may not have been fully dispositive, the circuit court's reliance on it, in part, to overrule Ess' claim was a misapplication of the law.

7

supported by the evidence presented at the evidentiary hearing. While Venireperson No. 26 first stated Juror No. 3 said the case was "cut-and-dry [sic]," he then corrected himself, stating the comment was "open and shut." Both phrases convey the same sentiment: Juror No. 3 believed there was no dispute about how the case should be resolved. Moreover, Juror No. 11 testified that while he did not hear what Juror No. 3 said, he knew it was related to the case, which is the reason he admonished Juror No. 3 to not talk about the case in the hall. The state presented no evidence whatsoever and did not impeach either witness's credibility in any meaningful way.

Generally speaking, the circuit court is free to believe all, part, or none of the testimony presented by the witnesses at the evidentiary hearing. *Brown & Williamson Tobacco Corp.*, 410 S.W.3d at 639. Hence, even if this Court found the circuit court completely disregarded the unimpeached testimony presented at the evidentiary hearing, the circuit court nevertheless misapplied the holding in *Mayes* that Ess was required to file an affidavit from Juror No. 3.

Further, the circuit court did not find the witnesses not credible, nor did the circuit court find the "open and shut" comment was not said at all.[8] Rather, the circuit court's express findings in its judgment make clear that its ruling was not based on such findings. The circuit court found that there was no information about the mannerism, tone, or gestures of Juror No. 3 that indicated an undisclosed bias and the testimony from Venireperson No.

---

[8] The circuit court's judgment makes no mention of Venireperson No. 26 having "told two stories" nor did it "specifically note[] that Venireperson 26 could not make up his mind" about what Juror No. 3 said, as the dissent asserted. Rather, the circuit court's judgment sets forth both statements Venireperson No. 26 testified to without any further commentary, credibility determination, or characterization.

8

26 and Juror No. 11 did not show that Juror No. 3 indicated whether he favored the state or the defendant.[9]  These findings show that the circuit court did not believe that no statement was made by Juror No. 3 but, rather, that it found that the statement alone was "not sufficient evidence to support [Ess's] contention that [Juror No. 3] intentionally concealed a bias or prejudice *against defendant*."  (Emphasis added.)  The question to be resolved then is whether Juror No. 3's comment that the case was "open and shut" is sufficient evidence of intentional juror nondisclosure to warrant a new trial.

### *Intentional Juror Nondisclosure*

When a criminal defendant invokes his or her right to a jury trial, the Sixth and Fourteenth amendments entitle that defendant to a panel of impartial, indifferent jurors whose verdict must be based upon evidence developed at the trial.  *Johnson v. State*, 406 S.W.3d 892, 910 (Mo. banc 2013).  The parties are entitled to ask questions to "help determine whether a venire member holds prejudices or biases that would impair the performance of his or her duties.  If prejudices are discovered, an inquiry should take place to reveal whether a juror can set aside prejudices and impartially fulfill his or her obligations as a juror."  *State v. Edwards*, 116 S.W.3d 511, 529 (Mo. banc 2003).

Venirepersons must have an "open mind, free from bias and prejudice."  *Mayes*, 63 S.W.3d at 624 (quoting *State v. Wheat*, 775 S.W.2d 155, 158 (Mo. banc 1989), overruled on other grounds by *Joy v. Morrison*, 254 S.W.3d 885, 888-89 (Mo. banc 2008)).  Venirepersons have a duty to answer all questions fully, fairly, and truthfully during voir

---

[9] However, as the state concedes in its brief, in Juror No. 3's absence at the hearing, any evidence from other witnesses concerning his state of mind is wrought with hearsay considerations for either party.

dire. *Id*. Failure to respond fully, fairly, and truthfully can deprive the parties of information needed to exercise peremptory challenges or challenges for cause to ensure an impartial jury is empaneled. *Id*. at 625.

Ess maintains he is entitled to a new trial due to intentional juror nondisclosure. "In determining whether to grant a new trial for juror nondisclosure, the court first must determine whether a nondisclosure occurred at all" and, if so, whether the nondisclosure was intentional or unintentional. *Saint Louis University v. Geary*, 321 S.W.3d 282, 295 (Mo. banc 2009). Nondisclosure can occur only after a clear question is asked during voir dire. *State v. McFadden*, 391 S.W.3d 408, 418 (Mo. banc 2013). An unequivocal question triggers a venireperson's duty to disclose information. *Saint Louis University*, 321 S.W.3d at 295. A venireperson's silence to an unequivocal question establishes juror nondisclosure, if the information is known to the juror. *Id.*

A prospective juror's qualifications are not determined from a single response but rather from the entire voir dire examination. *State v. Deck*, 303 S.W.3d 527, 535 (Mo. banc 2010). Upon complete consideration of the entire voir dire examination, the record clearly demonstrates Juror No. 3 intentionally failed to disclose material information. Specifically, Juror No. 3 formed an opinion concerning the outcome of the trial that would have disqualified him from serving on the jury before hearing any evidence.

At the outset of voir dire, the circuit court instructed the venire panel pursuant to MAI-CR3d 300.02[10] that a criminal trial "begins with the selection of a jury of qualified and impartial people." This instruction directed the venire panel that each venirepersons'

---

[10] MAI-CR3d refers to the Missouri Approved Instructions to be submitted to juries during criminal proceedings.

answers must be truthful, full, and complete and admonished the venire that the failure to be truthful could force the parties to retry the case. The prosecutor specifically asked if the venire panel would be "willing to listen to what everybody's got to say before you make up your mind." Juror No. 3 did not respond. The prosecutor directly asked Juror No. 3 whether there was any reason he would not be a good juror in this case, to which he responded, "Not really." At the conclusion of the prosecutor's voir dire, he asked if anyone needed to clarify or add anything about the ability to be a juror in the case. Again, Juror No. 3 did not respond.

The parties took a break before defense counsel began questioning. At the break, the circuit court read MAI-CR3d 300.04, which must be given at the first recess and at adjournment. This instruction explicitly directs the venire:

> Until this case is given to you to decide, you must not discuss any subject connected with the trial amongst yourselves, or form or express any opinion about it, and, until you are discharged as jurors, you must not talk with others about the case, or permit them to discuss it with you or in your hearing.

When voir dire resumed, defense counsel specifically asked whether any of the venirepersons held any preconceived notions about Ess's guilt or innocence at this point of the questioning:

> At this point I would ask you, how many of you have -- well, how many of you have a preconceived notion about the guilt or innocence of … Ess at this point? If you had to vote right now, how many people would vote guilty? Raise your hand if you would vote guilty at this point. That's asking a bunch for a bunch of law-abiding citizens; isn't it? You guys are doing good. That is -- you -- then you do understand that until we get to that point, beyond a reasonable doubt, that -- that you have nothing to go on. You must get to that point. Okay. All right. Is there anyone here who can't in effect look at … Ess and basically take the position, I don't believe you're guilty and they have to prove it to me beyond a reasonable doubt before I'll find you guilty? Is there anyone who has trouble with doing that, with truly applying the

reasonable doubt standard and the presumption of innocence? Everyone okay with that? All right.

These were clear, unequivocal questions. Juror No. 3 did not answer.

Shortly after this questioning occurred, the circuit court recessed for lunch and again read MAI-CR3d 300.04 to the venire panel. According to Venireperson No. 26, it was after lunch while sitting outside of the courtroom that Juror No. 3 commented, "this is an open-and-shut case." Juror No. 11 hushed Juror No. 3 and told him they were not supposed to talk about the trial in the hall. Once voir dire resumed, the venire panel was questioned further. The record reflects Juror No. 3 listened to several discussions by both attorneys and other venirepersons throughout voir dire about their ability to be fair and impartial; yet, Juror No. 3 remained silent. Defense counsel concluded voir dire by asking if anyone had thought of anything they needed to say to respond to a question previously asked. Again, Juror No. 3 did not respond.

Juror No. 3 was asked clear, unequivocal questions about his ability to be fair and impartial to which he repeatedly failed to respond. Once nondisclosure is established, the question becomes whether the nondisclosure is intentional or unintentional. "Intentional nondisclosure occurs when: 1) there is no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) the prospective juror remembers the experience or that it was of such significance that the juror's purported forgetfulness is unreasonable." *McFadden*, 391 S.W.3d at 418.

Given the extensive record, this Court finds this is an instance in which there exists no reasonable inability of Juror No. 3 to comprehend the information solicited by the questions posed to him during voir dire. The venire was asked repeatedly whether anyone

already formed an opinion or conclusion or held any bias against Ess concerning the case. The record renders it unreasonable that Juror No. 3 might fail to understand that the parties were probing for prejudice any venireperson might hold for or against either side. Further, any purported forgetfulness by Juror No. 3 of his "open and shut" comment and its implication are unreasonable given that the comment was made after the state concluded its voir dire and defense counsel completed approximately two-thirds of its questioning. Juror No. 3's failure to respond to these questions was an intentional nondisclosure. *McFadden*, 391 S.W.3d at 418. This Court presumes bias and prejudice occurred if a juror intentionally withholds material information. *Id.* Accordingly, a finding of intentional nondisclosure of a material issue is tantamount to a *per se* rule mandating a new trial. *Id.*

With respect to materiality, the circuit court's judgment found Ess presented no evidence to show whether Juror No. 3 favored the state or the defendant. Whether Juror No. 3 favored the state or the defendant is inconsequential because a predisposition toward *either* side material. *See* Section 494.470.1 (providing in pertinent part, "[N]o person who has formed or expressed an opinion concerning the matter or any material fact in controversy in any case that may influence the judgment of such person, … shall be sworn as a juror in the same cause.").

This Court recognizes the justice system presumes jurors, when properly instructed, will set aside any preconceived notions or premature conclusions about the case formed during the course of the trial until deliberations and then follow the court's instructions. *See* *McFadden*, 391 S.W.3d at 421. In this case, however, Juror No. 3 was instructed no fewer than three times - once before voir dire commenced and twice during voir dire that he was to

be truthful and he was prohibited from forming or expressing any opinion about the case - and he disregarded those instructions. It strains credulity that Juror No. 3, who had thrice ignored the circuit court's instructions during voir dire, would change his mind and become free of any partiality after being seated as a juror and, after hearing the evidence, would comply with the instructions he had violated previously.

Neither party was aware of Juror No. 3's statement, and both were deprived of an opportunity to flesh out his thoughts so as to rehabilitate him sufficiently and enable him to serve on the jury. Moreover, any bias or preconceived notion Juror No. 3 withheld from the parties during voir dire was both improper and violative of the circuit court's instructions. Most importantly, prospective venirepersons and jurors who serve at trial who form either a premature conclusion or hold a bias work to serve an injustice to our criminal justice system that guarantees both the state and the defendant an impartial, indifferent jury.

For the foregoing reasons, this Court holds the record amply supports a finding that Juror No. 3 formed and expressed an opinion concerning the facts at issue during voir dire and intentionally failed to disclose this material information during voir dire when asked about it. Accordingly, this Court must presume bias and prejudice has occurred due to Juror No. 3's intentional withholding of material information. *McFadden*, 391 S.W.3d 418. Ess's right to a fair trial was violated when Juror No. 3 served on the jury that ultimately convicted him after this intentional nondisclosure. The circuit court abused its discretion in overruling Ess's motion for new trial.

14

## Sufficiency of the Evidence

In his second and fifth points, Ess claims the circuit court erred in overruling his motions for judgment of acquittal at the close of the state's evidence and at the close of all evidence regarding counts II and V. Ess challenges the sufficiency of the evidence to uphold his convictions for first-degree statutory sodomy of W.L. and attempted first-degree child molestation of B.L., respectively.

### *Standard of Review*

To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but rather "accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences." *State v. Holmes*, 399 S.W.3d 809, 812 (Mo. banc 2013) (quoting *State v. Latall*, 271 S.W.3d 561, 566 (Mo. banc 2008)). "This Court's review is limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Letica*, 356 S.W.3d 157, 166 (Mo. banc 2011). "This is not an assessment of whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011) (internal quotations and citations omitted).

***First-Degree Statutory Sodomy of W.L.***

In count II, the information charged Ess with first-degree statutory sodomy alleging that, on or about January 1, 1995, and April 30, 1998, Ess, for the purpose of arousing or gratifying his own sexual desire, had deviate sexual intercourse with W.L., who was less than fourteen years of age, by having W.L. put his mouth on Ess's genitals. Ess alleges the state failed to present any evidence at trial of W.L.'s age at the time the offense was alleged to have occurred. Ess also claims the state failed to present evidence that the alleged acts occurred within the time frame stated in the amended information and in the jury instruction submitted.

Section 566.062.1 provides that first-degree statutory sodomy occurs when a person has "deviate sexual intercourse with another person who is less than fourteen years old." At the time in question, "deviate sexual intercourse" was defined as "any act involving the genitals of one person and the mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person." Section 566.010(1), RSMo 1994.

No witness testified about W.L.'s specific age or date that the offense charged in count II occurred. However, taking the evidence in the light most favorable to the jury's verdict, this Court finds there was sufficient evidence to convict Ess of first-degree statutory sodomy. W.L. testified about how Ess's sexual contact with him progressed from hugging and kissing, to masturbation, and "eventually progressed on to [Ess's] mouth on my genitals and him wanting me to put my mouth on his [genitals]." W.L. testified the sexual contact

16

started right after he turned twelve years old and "somewhere in the twelve range." W.L. testified that he remembered only one specific instance where Ess placed his mouth on W.L.'s genitals, and this incident occurred in the large upstairs bedroom.

W.L. could not recall when he moved into the large upstairs bedroom. W.L.'s grandmother testified W.L. was not living in the large upstairs bedroom when she visited on Christmas Eve in 1997. Ess argues this testimony demonstrates that the offense could not have occurred prior to W.L. turning fourteen. However, accepting all reasonable inferences that support the verdict, a rational trier of fact could conclude that the incident took place after Christmas Eve in 1997 and prior to W.L. turning fourteen in May 1998. Accordingly, the state presented sufficient evidence that would allow a reasonable juror to find Ess committed first-degree statutory sodomy of W.L. either when W.L. was approximately twelve years old or the four-month window prior to turning fourteen, which comported with the time frame charged in the information.

### *Attempted First-Degree Child Molestation*

In count V, the information charged Ess with first-degree child molestation, alleging that, on or about January 1, 1995, and July 25, 1996, Ess, for the purpose of arousing or gratifying his own sexual desire, knowingly subjected B.L. to sexual contact by having B.L. place his hand on Ess's genitals when B.L. was less than fourteen years of age. Ess filed a motion for judgment of acquittal at the close of the state's evidence. During that hearing, the circuit court noted there was a change in the child molestation statute regarding whether touching could be through or underneath the clothing for purposes of demonstrating sexual contact. The state conceded this statutory change and offered to amend the information to

17

charge Ess with attempted first-degree child molestation. This amended count was submitted to the jury, although no amended information was filed with the circuit court.

Ess claims the state failed to present any evidence that he had the purpose of committing first-degree child molestation or that he committed a "substantial step" toward committing the offense. Specifically, Ess claims the state failed to present any evidence of any attempt or that Ess acted with the purpose of being touched by B.L. underneath Ess's clothing. The state argues that placing B.L's hand so that it touched Ess's penis through his clothing was a substantial step toward making B.L.'s hand have skin-to-skin contact with Ess's penis.

Section 566.067.1 provides that a person commits the crime of first-degree child molestation when he or she subjects another person who is less than fourteen years old to sexual contact. In 1995, section 566.010(3) defined "sexual contact" as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, for the purpose of arousing or gratifying sexual desire of any person." "The definition of 'sexual contact' contained the phrase, 'or any such touching through the clothing,' from the time of its enactment in 1977 until January 1, 1995, when an amendment took effect removing that language." *State v. Kelso*, 391 S.W.3d 515, 521 (Mo. App. W.D. 2013). Accordingly, after the amendment, this "statute was interpreted to mean that evidence of touching through the clothing did not support a finding of sexual contact." *Id.*[11]

---

[11] Touching through clothing was added back into the definition of "sexual contact" in 2002. *State v. Miller*, 372 S.W.3d 455, 468 (Mo. banc 2012).

18

Section 564.011 states that to prove an attempt, the person must, with the purpose of committing the offense, do any act that is a substantial step toward the commission of the offense. "A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." *Id.*

This Court holds the state failed to present sufficient evidence that Ess attempted to commit first-degree child molestation against B.L. as alleged in count V. The evidence adduced at trial demonstrated that, when B.L. was five years old, Ess came into B.L's bedroom, laid down behind him, and Ess placed B.L.'s hand on top of Ess's penis over his clothing. Ess instructed B.L. to "hold it between his legs while I slept." B.L. did as instructed, despite stating he was uncomfortable, and later fell asleep. When he awoke, Ess had left the room. This evidence was not strongly corroborative of Ess's purpose to complete the offense of first-degree child molestation, which at the time required skin-to-skin contact by touching underneath the clothing.

"The double jeopardy clause precludes remand for a second trial when a conviction is reversed because the evidence introduced at the first trial was legally insufficient." *Miller*, 372 S.W.3d at 468 (quoting *State v. Self*, 155 S.W.3d 756, 764 (Mo. banc 2005)). Here, there was insufficient evidence presented that Ess attempted to commit first-degree child molestation against B.L.; accordingly, the circuit court erred in overruling Ess's motion for judgment of acquittal on that count. Ess's conviction under count V is reversed, and the cause is remanded for an entry of a judgment of acquittal on that count.[12]

---

[12] The more appropriate charge to bring against Ess would have been for first-degree sexual misconduct, section 566.090, RSMo Supp. 1995, which at the time in question included engaging in conduct that would constitute sexual contact except that the touching occurs

19

**Conclusion**

For the reasons set forth, the circuit court's judgment is reversed, and the case is remanded. This Court need not review Ess's remaining points but advises the circuit court to be mindful of this Court's holding in *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), when crafting jury instructions on remand.

_____
GEORGE W. DRAPER III, JUDGE


Russell, C.J., Breckenridge, Stith and Teitelman, JJ., concur; Wilson, J., concurs in part and dissents in part in separate opinion filed; Fischer, J., concurs in opinion of Wilson, J.

---

through the clothing and without the person's consent. *See State v. Hale*, 285 S.W.3d 394, 395 n.1 (Mo. App. E.D. 2009).



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,             )
                                      )
            Respondent,     )
                                        )
v.                                     )     No. SC93745
                                        )
THOMAS A. ESS,              )
                                        )
            Appellant.      )

## OPINION CONCURRING IN PART AND DISSENTING IN PART

Based on the inconsistent, post-hoc testimony of one venireperson who claims he overheard another venireperson make an ambiguous comment to a third venireperson (who unequivocally denied hearing the comment), the principal opinion holds not only that the trial court was ***permitted*** to find sufficient juror nondisclosure to warrant a new trial, it holds that the trial court had ***no choice*** but to make that finding. This conclusion departs from the applicable standard of review, it deprives the trial court of the deference due its superior ability to make difficult factual findings, and it suggests that a fact finder is only free to believe or disbelieve all or any part of the evidence if it reaches the right answer. Because the record amply supports the trial court's conclusion that Ess failed to prove his juror bias claim, I respectfully dissent.

## I.    *Juror Nondisclosure*

The principal opinion holds that the trial court abused its discretion in denying

Ess's claim that Juror No. 3 intentionally failed to disclose in voir dire that he had formed

a premature opinion about the case in violation of the trial court's instructions. But that

is not the claim Ess made, either in the trial court or in this Court. The claim that Ess

asserted in his new trial motion – and the claim that the trial court overruled – was that

Juror No. 3 was **biased** against Ess and that he failed to disclose this bias when asked.

The two claims are distinct, and Ess is entitled only to appellate review of the claim he

brought, not the claims he might have brought. By the same token, the trial court is

entitled to be reviewed only on the decision it made, not a decision it might have made

had Ess raised a different claim.

Ess's new trial motion does not argue that Juror No. 3 was not sufficiently

impartial to serve as a juror under section 494.470.2, RSMo 2000, and it does not claim

that Juror No. 3 committed misconduct by drawing a premature conclusion about the case

prior to deliberations.[1] Instead, the only claim regarding Juror No. 3 that Ess raised in his

new trial motion is that Juror No. 3 committed misconduct by "**failing to disclose that he**

**was biased against the defendant**" and that this juror made a comment during a break in

---

[1] I agree with the principal opinion that the trial court did not abuse its discretion in ruling that Ess's new trial motion was timely. The claims raised in Ess's new trial motion are preserved, therefore, and appellate review of those claims is not dependent solely on this Court's discretion under the plain error doctrine. But such review is limited to those claims actually asserted in the motion for new trial. *State v. Pullen*, 843 S.W.2d 360, 362 (Mo. banc 1992) (claims not asserted in new trial motion are not preserved for review). Counsel's oral argument can no more raise new claims that were not raised in the written motion than an untimely oral motion for new trial can substitute for a written motion altogether. The language of Ess's motion controls. The trial court's order plainly identifies – and rejects – the claim that Ess raised, but it is not the claim on which this Court now reverses and grants Ess a new trial.

2

voir dire that "reveals a ***bias existing at the outset of the trial***, *a bias* that [Juror No. 3] intentionally ***did not disclose*** during voir dire."[2]  [Emphasis added.]

Ess claims that Juror No. 3 intentionally failed to disclose that he was biased against Ess.  "Allegations of nondisclosure are not self-proving and must be proven." *State v. McFadden*, 391 S.W.3d 408, 418 (Mo. banc 2013).  For Ess to prove that Juror No. 3 failed to disclose that he was biased against him, Ess must first prove that Juror No. 3 actually ***was biased*** against him.  *See State v. Mayes*, 63 S.W.3d 615, 626 (Mo. banc 2001) (rejecting nondisclosure claim for failure to prove the fact that allegedly was not disclosed).

Any argument that this Court should ***presume*** Juror No. 3 was biased against Ess is circular.  To be clear, bias will be presumed when a venireperson intentionally fails to disclose certain facts.  But such a presumption does not arise unless and until the claimant proves an intentional nondisclosure of those facts in the first instance.  Accordingly, Ess cannot rely on a presumption that Juror No. 3 was biased in order to prove that Juror No. 3 failed to disclose he was biased.

The trial court's analysis of Ess's new trial motion focused initially on whether Ess had proved that an intentional nondisclosure occurred.  As this Court has stated,

> In determining whether to grant a new trial for juror nondisclosure, the court first must determine whether a nondisclosure occurred at all. Nondisclosure can occur only after a clear question is asked during voir dire. An unequivocal question triggers a venireperson's duty to disclose. Silence to an unequivocal question establishes juror nondisclosure if the information is known to the juror.

---

[2]  Ess's new trial motion also stated that Juror No. 3 had "communicated" his bias to others during the voir dire recess.  The trial court treated this as a claim of improper communication, and its denial of this claim is not challenged on appeal.

3

*Saint Louis Univ. v. Geary*, 321 S.W.3d 282, 295 (Mo. banc 2009) (internal citations omitted).

As *Geary* makes plain, a claimant seeking to prove an intentional nondisclosure must establish that the venireperson is consciously aware of an objective *fact* and then fails to disclose that fact despite an unequivocal request to do so from the court or counsel. In the past, the only "fact" that has met this definition is the juror's objectively verifiable involvement in other litigation. *Johnson v. McCullough*, 306 S.W.3d 551, 558 (Mo. banc 2010) (finding intentional nondisclosure when juror concealed "numerous and recent" similar lawsuits); *Brines By & Through Harlan v. Cibis*, 882 S.W.2d 138, 139 (Mo. banc 1994) (same); *Williams By & Through Wilford v. Barnes Hosp.,* 736 S.W.2d 33, 38 (Mo. banc 1987); *Beggs v. Universal C. I. T. Credit Corp.*, 387 S.W.2d 499, 503-04 (Mo. banc 1965). *See also Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 643 (Mo. banc 2013) (noting it is permissible to inquire whether a juror concealed a belief "that all litigation of a certain type is frivolous").

This case presents a very different situation. Here, the "fact" that Ess claims was the subject of the intentional nondisclosure was Juror No. 3's "bias existing at the outset of the trial." Juror No. 3 did not admit this "fact" as the jurors did in *Harlan*, *Wilford*, and *Beggs*. Nor did Ess prove this "fact" with objectively verifiable records as the claimant did in *Johnson*. Instead, Ess gave the trial court little to go on other than the inconsistent testimony of Venireperson 26, who claims he overheard Juror No. 3 make a remark to Juror No. 11. Ess offered no corroboration for this testimony. To the contrary,

4

Juror No. 11 denied hearing the statement Juror No. 3 supposedly made, and the only person who claimed to have heard it – i.e., Venireperson 26 – did not mention it to anyone until after the trial was over and he learned of the verdict. Finally, there was no evidence as to what Juror No. 3 meant by this comment even if he did make it.

Nor is Venireperson 26's testimony, on its own, so compelling to merit the principal opinion's holding that the trial court abused its discretion in refusing to find it sufficient. The trial court specifically noted that Venireperson 26 could not make up his mind what he heard. In his affidavit, he alleged that Juror No. 3 said the case was "open and shut." At the hearing, he testified that Juror No. 3 said the case was "cut-and-dry." Then, when Ess's counsel pointed out this inconsistency, Venireperson 26 retreated and said the comment was that the case was "open and shut."

More importantly, the trial court relied heavily on the fact that Juror No. 11 not only did not hear Juror No. 3 make the "open and shut" comment (or the "cut-and-dry" comment), Juror No. 11 testified unequivocally that he did not "***gather or perceive that [Juror No. 3] had a preconceived bias or notion about the case***." [Emphasis added.] This Court, time and again, has stated that the finder of fact is free to believe all, any, or none of the evidence presented. *Smith,* 410 S.W.3d at 623, 639. Under the principal opinion, however, the trial court was not free to disbelieve Venireperson 26's testimony no matter how inconsistent and uncorroborated it was.

The trial court made a detailed analysis of the evidence presented and plainly found Venireperson 26's testimony was not sufficient to establish Ess's claim. The court never found that Juror No. 3 made the comment (or any version of it). That was a

5

question of fact and, under *Smith*, 410 S.W.3d at 639, this Court must presume it was found in accordance with the trial court's decision. In other words, this Court must presume the trial court found Juror No. 3 did not make the statement Venireperson 26 claims he heard. That presumption is amply justified here because the trial court evidently was swayed by the fact that Venireperson 26 told two different stories, neither of which was corroborated by Juror No. 11 or anyone else. The trial court also noted that Venireperson 26 never claimed to have heard this comment until after the trial was over, even though he was asked at the end of voir dire whether there was anything he (or anyone else) needed to divulge to the court (and was told he could make this disclosure confidentially). Under the principal opinion, however, the trial court was required to ignore all of this and accept Venireperson 26's testimony as a true and sufficient basis on which to grant a new trial.

Finally, even if Juror No. 3 made the "open and shut" comment (or the "cut-and-dry" comment, as the case may be), there was no evidence from any source as to what Juror No. 3 meant and whether this comment really demonstrated the "bias existing at the outset of the trial" that Ess alleged. The trial court specially noted the lack of evidence regarding the context, tone, or meaning of the comment, which suggests that the trial court understood this comment does not necessarily reveal a bias against Ess. The principal opinion ignores the "even if" character of this analysis, however, and assumes that it must mean the trial court believed Juror No. 3 made the comment(s) Venireperson 26 claims he heard. That is the antithesis of the deference this Court is supposed to give to the finder of fact, and it is as logically faithful to the trial court's order as an appellate

6

court compelling the trial court to grant summary judgment in favor of a plaintiff because, in an earlier motion to dismiss, the defendant assumed all of the allegations were true.

In addition, the principal opinion suggests that the trial court abused its discretion when it "relied on" language in *Mayes* to deny Ess's new trial motion because he failed to submit an affidavit from the juror who supposedly committed the nondisclosure. Not only does the record not support the principal opinion's suggestion, it explicitly refutes it. The trial court did ***not*** dismiss Ess's claim of intentional nondisclosure for lack of an affidavit from Juror No. 3. To the contrary, the trial court held a hearing, received evidence, and entertained written suggestions and argument of counsel. Following the hearing, the trial court issued a written order analyzing the evidence and concluding it was insufficient to support the claim.

True, prior to its substantive discussion of Ess's claim, the trial court noted the misleading language from *Mayes*, 63 S.W.3d at 615, 626.[3] But, far from "relying on" that language, the trial court's order never mentions *Mayes* again. Nowhere does the trial court suggest that *Mayes* was dispositive of the claim, or even "partially" dispositive, as the principal opinion suggests. No matter what evidence Ess did (or did not) attach to his motion, the trial court's decision was based on the evidence Ess offered at the hearing. It

---

[3] The single phrase of *Mayes* to the contrary notwithstanding, a movant need not submit an affidavit of the allegedly offending juror to make out a claim of intentional nondisclosure. *See Mayes*, 63 S.W.3d at 626 (nondisclosure claim was overruled due to "counsel's failure to call the juror ***or otherwise establish the facts***") (emphasis added). *See also Johnson*, 306 S.W.3d at 558 (affirming finding of intentional nondisclosure without an affidavit when juror's "numerous and recent" litigation experiences were shown by Case.net records).

was this proof that the trial court concluded was "not sufficient … to support Defendant's contention that juror three intentionally concealed a bias or prejudice against defendant."[4]

Ess chose to rely almost exclusively on the testimony of Venireperson 26.[5] Not only was the trial court free to disbelieve all of any part of that testimony, it had several very good reasons for doing so. That finding is well supported by the record and is entitled to deference. Accordingly, I would hold that the trial court did not abuse its discretion in denying Ess's claim of intentional nondisclosure.

## II.  *Instructional Error Regarding Unanimous Jury Verdicts*

Because there are no valid grounds for reversing Ess's convictions on the basis of juror nondisclosure, the Court should reach – and reject – Ess's claim that Instruction No. 5 and Instruction No. 8 violated his right to a unanimous jury verdict because neither instruction identified a particular act of sodomy – or required the jury to agree on a particular act of sodomy – from among the many incidents described in the evidence.

---

[4] Even if the circuit court had improperly "relied on" a reading of *Mayes*, that is no cause for reversal. Because "appellate courts are primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result," the judgment "must be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Rouner v. Wise*, --- S.W. 3d --- (No. SC93679) *(*slip opinion at page 5*)* (Mo. banc 2014) (internal quotations and citations omitted). Here, that theory is that Ess failed to prove his claim.

[5]  Even though Ess was entitled to bring his nondisclosure claim without testimony from Juror No. 3, that does not mean that the trial court was prohibited from considering that Ess – as the party with the burden of proof – failed to offer it straight from the "horse's mouth" or offer an explanation for why this particular "horse" was not heard from at all. *See Johnson*, 306 S.W.3d at 558 (noting that, although evidence was sufficient to establish nondisclosure, "the better practice here would have been for the party seeking a new trial to have deposed [the juror], obtained an affidavit, or had her testify"). Moreover, *Mayes* itself stands for the proposition that the movant will lose a juror nondisclosure claim when evidence of nondisclosure is ambiguous and this Court is left to "speculate as to whether any nondisclosure occurred at all, much less intentional nondisclosure." *Mayes*, 63 S.W.3d at 626.

8

Because Ess did not raise these objections at trial or in his new trial motion, they are to be reviewed – if at all – only for plain error.

Under Rule 30.20, plain error review is discretionary, and it "is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *State v. Jones*, 427 S.W.3d 191, 195 (Mo. banc 2014). When a party seeks appellate review of a defaulted claim of trial error, this Court must first determine whether the claim concerned substantial rights such that, if error is shown, a manifest injustice or a miscarriage of justice could have resulted. *Id.* Second, this Court must determine whether the claimed error was "plain," i.e., whether it was "evident, obvious, and clear." *Id.* Finally, the Court must consider whether a miscarriage of justice or manifest injustice will occur if the claimed error is left uncorrected. *Id.* The first two threshold elements evaluate the nature of the claimed error, but the last element examines the effect of the claimed error in the particular case. "Manifest injustice is determined by the facts and circumstances of the case, and the defendant bears the burden of establishing manifest injustice." *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006) (citing *Mayes,* 63 S.W.3d at 624).

The first two elements of this inquiry are resolved by this Court's holding in *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011). In that case, the Court considered the situation when "there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Celis-Garcia*, 344 S.W.3d at 155-56. This Court held that the verdict director in such a case will violate the defendant's right to a unanimous jury verdict under

9

article I, section 22(a) of the Missouri Constitution unless it not only describes the criminal acts with specificity but also instructs the jury "to agree unanimously on at least one of the specific criminal acts described in the verdict director." *Id.* at 158. Because the instructions there had not met these criteria, the Court found them erroneous under plain error review.

Instructions No. 5 and No. 8 in this case are similarly deficient. Instruction No. 5 provided that the jury was to find Ess guilty of first-degree sodomy if it found beyond a reasonable doubt that Ess committed deviate sexual intercourse by putting his mouth on W.L.'s genitals between January 1, 1995, and April 30, 1998, when W.L. was less than 14 years old. Instruction No. 8 provided that Ess was guilty of second-degree sodomy if the jury found beyond a reasonable doubt that Ess committed the same conduct between May 1, 1998, and May 1, 2000, when W.L. was less than 17 years old and Ess was more than 21 years old. There was evidence at trial that Ess had orally sodomized W.L. on multiple occasions – "sometimes nightly" – during each of the time periods listed in the instructions. Accordingly, Instructions No. 5 and No. 8 in this case were erroneous because they do not describe specific acts of sodomy committed by Ess against W.L. in the separate time periods and they do not insist that the jury unanimously find that one or more of those acts occurred.

The inquiry does not end there, however. To warrant relief for plain error, Ess must also show that the erroneous instructions actually resulted in a miscarriage of justice

10

or manifest injustice in his case.  Because he cannot, his claim is distinguishable from

*Celis-Garcia* and does not merit relief.[6]

In *Celis-Garcia*, this Court found not only that the challenged instructions were

erroneous but had also resulted in manifest injustice or a miscarriage of justice because:

> Unlike some statutory sodomy cases in which the defense simply argues that the victims fabricated their stories, Ms. Celis–Garcia sought to exploit factual inconsistencies and raise doubts about the plausibility of the *specific incidents* of statutory sodomy alleged by her daughters. [….]
>
> [… T]he fact that Ms. Celis–Garcia relied on evidentiary inconsistencies and factual improbabilities respecting *each specific allegation of hand-to-genital contact* makes it more likely that individual jurors convicted her on the basis of different acts. The Court finds that the verdict directors misdirected the jury in a way that affected the verdict, thereby resulting in manifest injustice.

---

[6]   Claims of instructional error are particularly ill-suited for plain error analysis when the decision not to object to the state's instructions may have been motivated by reasonable trial strategy.  If an appellate court (or a trial court acting under Rule 29.12) denies plain error review of such a claim, the defendant may still raise the issue in a post-conviction claim of ineffectiveness of counsel and a record can be made as to whether the decision not to object was a reasonable trial strategy.  But, in *Celis-Garcia*, for example, no record regarding the motivation for defense counsel's decision not to object was created – or even appropriate – because the issue was decided as a matter of plain error on direct appeal.  As a result, it will never be known whether the decision not to object to the state's instructions in *Celis-Garcia* was a matter of trial strategy even though the subsequent history of that case shows such a strategy would not have been unreasonable.  There, the defendant was charged – and the jury was instructed – only on two counts of first-degree statutory sodomy; one count for each of the defendant's two minor children, with both counts covering all acts within a 15-month time period.  The defendant did not object to those charges or to the state's proffered instructions. In fact, she offered alternative instructions using this same two-count approach. *Celis-Garcia*, 344 S.W.3d 154 n.3.  She was convicted and sentenced to concurrent 25-year sentences.  On direct appeal, the defendant argued that the trial court committed plain error in giving the instructions proffered by the state.  This Court agreed and vacated the defendant's convictions. *Id.* at 159.  On remand, the state expanded the charges to reflect each specific act that the defendant committed against each specific victim.  At trial, the state proffered jury instructions consistent with those charges and the evidence, and the jury convicted her on 10 counts of first-degree statutory sodomy, six counts of first-degree child molestation, and one count of statutory rape. *State v. Celis-Garcia*, 420 S.W.3d 723, 725 (Mo. App. 2014).  Based on the jury's recommendations, she was given 11 life sentences and six 15-year sentences, with three of her life sentences and two of her 15-year sentences to be served consecutively. *Id.*

*Celis-Garcia*, 344 S.W.3d at 158-59 (emphasis added).

This conclusion was based upon the understanding that the more the defendant (or the state) invites the jury to distinguish between the various criminal incidents – any one of which is sufficient to convict – the higher the risk that jurors will return a verdict that appears unanimous but is not. This increased risk justified the Court's decision to grant relief under plain error in *Celis-Garcia*, but there is no such increased risk in the present case and, therefore, no basis for relief.

Ess did not assert the type of incident-by-incident defenses that were raised in *Celis-Garcia*, and Ess did not plead with the jury to evaluate the incidents one at a time as was argued in *Celis-Garcia*. Instead, Ess defended the numerous acts collectively and urged the jury to do the same. In closing argument, Ess's counsel stated that the jury:

> ... ha[d] been given nothing beyond the allegations themselves in this case. There is not one bit of corroborating evidence, nor is there anything that Tom Ess or myself on Tom Ess's behalf is in a position to present to you as some sort of smoking gun to refute those allegations.

Ultimately, Ess's counsel told the jury that it was "their word against his" and that "the only evidence [Ess] had [was that] he said he didn't do this stuff, and … other people say it's not in his character to tell you a lie." Because these arguments do not invite the jury to consider each of the acts of sexual abuse separately, they do not increase the risk of a conviction on less than a unanimous verdict from the theoretical to the likely, as occurred in *Celis-Garcia*.

Ess insists that he did have incident-specific defenses. In particular, Ess claims that he "had available" specific defenses for abuses occurring in each of four bedrooms in

12

the house, citing accounts from W.L. and other witnesses regarding when W.L. had moved from one bedroom to another. Some of these, such as the argument that Ess could not be guilty of the mouth-to-genital contact described in Instruction No. 5 because W.L. was at least 14 when it occurred, do not invite the jury to consider different instances of abuse separately, but to acquit him of the charge altogether. More importantly, the jury never heard these "available" arguments; they are raised for the first time on appeal.

At trial, Ess's argument to the jury was that, based on the inconsistencies in the children's statements, the jury should conclude the children were lying and disregard their evidence completely. But neither Ess nor the state invited the jury to distinguish between the many acts described in the evidence. As a result, there is no sound basis for this Court to conclude that the jury did so and no basis to conclude that, if the instructions had detailed the acts and expressly required unanimity on one act per count, the trial would have ended any differently.[7]

### III. *Conclusion*

For the reasons set forth above, I respectfully dissent from the principal opinion's holding that Ess's convictions must be vacated and a new trial conducted because the trial court abused its discretion by not believing the conflicting and uncorroborated testimony of a single venireperson regarding what another venireperson said to a third venireperson

---

[7] Similar analyses have been used in the lower courts to affirm convictions even when a unanimous verdict violation is shown under *Celis-Garcia*. *See State v. Rose*, 421 S.W.3d 522, 529 (Mo. App. 2013); *State v. LeSieur*, 361 S.W.3d 458, 465 (Mo. App. 2012) (reversal unwarranted when "defense was common to all of the sexual encounters described by the victim: a general attack on her credibility, and emphasis on the supposed implausibility of the account she gave").

(who did not hear it).  Instead, I would reverse Ess's conviction and sentence as to Count

V and affirm each of the other convictions and sentences in all respects.[8]

 

_____

Paul C. Wilson, Judge

---

[8]  I concur in the principal opinion's conclusions that the evidence was sufficient to support Ess's conviction under Count II (i.e., first-degree statutory sodomy of W.L.) but insufficient to support his conviction under Count V (i.e., attempted child molestation of B.L.).